IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

RUBEN GUERRERO #1635715 §

v. § CIVIL ACTION NO. 9:11cv82

TY N. TURNER, ET AL. §

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT

The Plaintiff Ruben Guerrero, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. This Court ordered that the matter be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. As Defendants, Guerrero named correctional officers Ty Turner and Kenneth Ragland, Major Tove Butcher, and Wardens Michael Sizemore and Gregory Oliver.

In his complaint and at an evidentiary hearing, Guerrero says that he arrived at the Eastham Unit around June 1, 2010, and stayed on transient status until June 23, when he was given a housing assignment and a job assignment to the field force. The next day, he did not turn out for work because he was having "psychological issues." Officer Turner came to his cell to see why he did not turn out for work and Guerrero told him about these issues. He thought Turner would take him to the medical department, but instead, Turner threatened to shoot him.

Turner then talked to Ragland, who wrote Guerrero a disciplinary case for attempted escape. At the hearing, Ragland testified that Guerrero's conversation with Turner had actually been with him, Ragland, although this was not true. Guerrero was convicted of the attempted escape charge.

On July 2, 2010, Guerrero stated that he went to a unit classification hearing and told Warden Sizemore what had happened, and Sizemore laughed at him and said that if Turner wanted to keep

his job, "he better shoot you." Sizemore transferred Guerrero to another field squad, away from Turner, saying that maybe the officer in charge of that squad would not shoot him.

At another classification hearing six days later, Guerrero told Major Butcher what had happened, but Butcher showed no concern, and asked for Guerrero's emergency contact information, implying that something bad was going to happen.

On July 10, 2010, Guerrero filed a grievance, but he says that it "got lost." He filed another one in November of 2010, which was denied. He wrote to the Governor of Texas, who referred the letter back to TDCJ, and the Office of the Inspector General told him that they would not do anything. A life endangerment hearing was held in November and Warden Oliver dismissed Guerrero's concerns as "nothing."

Guerrero stated that several years earlier, he had been at the Huntsville Unit. He was assigned a job outside of the prison walls, but he could not handle it, so he was reassigned inside. He was labeled as an escape risk. When talking to Turner in 2010, Guerrero said, he told the officer that he had been labeled as an flight risk, but Turner said that he did not care, he had a gun and would shoot him. Ragland then conspired with Turner to write the disciplinary case and cover up the threat.

As a result of the disciplinary case, Guerrero said that he had "lost everything," including being dropped to medium custody, and is now on loss of privileges status. He conceded that he is still refusing to turn out for work, stating that the officers come by his cell and ask him if he is going to work and he says no.

The TDCJ records, offered into evidence at the evidentiary hearing in this case, show that Guerrero received a disciplinary case for expressing an intention to escape from custody, in that he said that "I am a flight risk and if I go to the fields, I am going to run." According to a statement by Guerrero in the disciplinary case, Turner asked him why he did not go to work and he said that this was supposed to have been taken care of in 2003, when he asked to be moved from an outside job to an inside job for psychological reasons. When he asked why his status had changed, he was told

that he had been labeled as a flight risk. Guerrero explained this to Turner, who said "that's medical and has nothing to do with me, I got a gun, I will shoot you."

After review of the pleadings, the Magistrate Judge issued a Report recommending that the lawsuit be dismissed. The Magistrate Judge first cited Fifth Circuit case law to the effect that threatening words and gestures from a custodial officer do not themselves amount to constitutional violations, and so Turner's threat to shoot Guerrero did not amount to a violation of Guerrero's constitutional rights.

The Magistrate Judge next said that because the threat did not amount to a constitutional violation, Guerrero's complaint that Ragland conspired to cover up the threat also was not a constitutional violation. The Magistrate Judge stated that to recover on a claim of conspiracy, there must be an actual deprivation of a constitutional right, not merely a conspiracy to deprive.

With regard to Guerrero's claim that the disciplinary case he received from Ragland was false, the Magistrate Judge stated that there is no free-standing constitutional right to be free from malicious prosecution, and that Guerrero cannot seek damages concerning a prison disciplinary case through a civil rights lawsuit absent a showing that the case has been expunged, overturned, or otherwise set aside. Thus, the Magistrate Judge concluded that Guerrero's claims against Ragland lacked merit.

Next, the Magistrate Judge stated that the evidence, including Guerrero's testimony, showed that TDCJ officials believed that Turner's statement was not a threat *per se*, but a response to Guerrero's statement about being a flight risk, indicating that Guerrero would be shot if in fact he tried to run. The response to Guerrero's Step Two grievance says that he had been "warned of impending results if you did attempt to run from the field force; however, that is an interpretation of policy and not a direct threat to your safety or well-being."

Thus, the Magistrate Judge determined that Guerrero had failed to show that Major Butcher knew of and disregarded an excessive risk to his health or safety, as required for a showing of deliberate indifference to his safety. The Magistrate Judge stated that even if Major Butcher should

3

have known that Turner's statement amounted to a "significant risk" to Guerrero's safety, this by itself does not show deliberate indifference. Even if Turner's statement was an over-reaction to what Guerrero said, this does not make the statement itself a constitutional violation, nor does it show that Major Butcher was deliberately indifferent to Guerrero's safety by failing to take action.

Although Guerrero complained that Warden Sizemore had laughed at him and not taken his fears seriously, the Magistrate Judge concluded that Guerrero had not shown that Sizemore was deliberately indifferent to his safety, particularly in light of the fact that Sizemore in fact did take action, by moving Guerrero to another field squad, away from Turner. Similarly, the Magistrate Judge determined that Guerrero had not shown that Warden Oliver was deliberately indifferent to his safety by failing to take the actions which Guerrero thought appropriate. Guerrero also said that he had written to Warden Oliver about other problems on the unit, including incidents of staff misconduct, but nothing was done; the Magistrate Judge noted that Guerrero did not indicate that any of these incidents involved him, and that Guerrero did not have a constitutional right to have the complaints expressed in these letters resolved to his satisfaction.

Guerrero filed objections to the Magistrate Judge's Report on February 28, 2012. In his objections, Guerrero states that Officer Turner, for his own "gratuitous pleasure," threatened his life by saying "I got a gun, I will shoot you." He says that the practice of slavery has been abolished and that it shocks the conscience to learn that Turner, in the course of his employment, "preserves characteristics of early slavery." Guerrero adds that it is even more shocking that Turner disregards TDCJ guidelines, shows deliberate indifference to Guerrero's medical needs, and has "gratuitously inflicted suffering and fear." He says that Turner had a duty to notify the medical department of Guerrero's psychological needs, but instead threatened to take his life.

These objections fail to address the Magistrate Judge's conclusion that threatening words do not rise to the level of a constitutional violation. See Bender v. Brumley, 1 F.3d 271, 274 n.3 (5th Cir. 1993). Nor does the fact that Turner did not escort him to the medical department upon being told by Guerrero that the inmate was suffering from unspecified "psychological problems" show that

4

a constitutional violation occurred; Guerrero has not shown that these "psychological problems" amounted to a serious medical need, nor that he was denied medical or mental health treatment. *See* Estelle v. Gamble, 429 U.S. 97, 105 (1976) (interference with medical assistance by security officers may state a valid claim if the interference amounts to deliberate indifference to a serious medical need). Guerrero's objection on this point is without merit.

Next, Guerrero complains again that he received the disciplinary case from Ragland, not Turner, and that Ragland "conspired to cover up a constitutional violation." The fact that Ragland was the charging officer in the disciplinary case does not violate Guerrero's constitutional rights. As the Magistrate Judge correctly concluded, Guerrero cannot seek damages for the disciplinary case in a Section 1983 action without a showing that the case has been expunged, overturned, or otherwise set aside. Clarke v. Stalder, 154 F.3d 186, 189 (5th Cir. 1998). The claim that Ragland conspired with Turner to cover up Turner's threat does not set out a constitutional violation because the threat itself is not a constitutional violation, and a conspiracy claim requires that an actual violation take place. Villanueva v. McInnis, 723 F.2d 414, 418 (5th Cir. 1984). Guerrero's objection on this point is without merit.

Next, Guerrero says that Warden Sizemore "condoned" Turner's threat and assigned him to another squad, but he believes, though unable to verify, that his new squad is headed by "one of Turner's brothers." The evidence showed that the TDCJ officials interpreted Turner's alleged threat as a statement that if Guerrero tried to run away, Turner would shoot him. Guerrero concedes that a life endangerment investigation was done, which concluded that there was no credible threat to his life. Guerrero has not shown that Sizemore actually knew of and disregarded a substantial risk to his safety. His objection on this point is without merit.

In any event, Guerrero says, the very fact that he was assigned back to work in the field force shows that the officers were deliberately indifferent to his safety. He says that after the evidentiary hearing in this case, he met an inmate named Gary Moton, who had recently been released from administrative segregation after being there eight years on a charge of "verbal attempted escape."

5

He fails to show how this fact renders the Defendants deliberately indifferent to his safety. This objection is without merit.

Guerrero says that Major Butcher suggested that if Guerrero did not vacate his cell in pre-hearing detention and go to population, "some impending danger" awaited. In his complaint, he stated that Major Butcher told him that he was not going to use the pre-hearing detention cells to "hide out" and that he had to go to population. Butcher also asked him about the accuracy of his contact information. None of these actions show that Butcher knew of or disregarded an excessive risk to Guerrero's health or safety. Even if Butcher's statements could somehow be construed as a threat, the Magistrate Judge properly determined that mere threatening language did not amount to a constitutional violation. Nor has Guerrero shown that he in fact faced a significant risk to his health or safety. His objection on this point is without merit.

Next, Guerrero says that Warden Oliver "clearly had been aware of all the facts," because Oliver had signed off on the Step One grievance. In addition, Oliver conducted the life endangerment investigation, and dismissed Guerrero's fears as "nothing."

Although the Magistrate Judge stated that Guerrero appeared to be complaining about violations of other persons' rights with regard to his letters to Oliver, Guerrero says that the nature of these complaints was to establish deliberate indifference by Oliver and the unit administration towards his health and safety as well as that of other inmates. He says that "many instances exist" in which he was the victim of staff misconduct and assault and that these are for the trier of fact, not the Magistrate Judge. However, the claim in the present case does not concern those alleged instances of staff misconduct and assault, but rather the assertion by Guerrero that Oliver was deliberately indifferent to his safety by not taking the actions which Guerrero believed appropriate on the letters which Guerrero wrote. The Magistrate Judge correctly determined that Guerrero does not have a constitutionally protected liberty interest in having his complaints resolved to his satisfaction, and so there was no violation of due process when Warden Oliver failed to do so. Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005). Guerrero has not shown that the fact that

the letters which he wrote to Warden Oliver were not resolved to his satisfaction amounted to a constitutional violation, nor that Warden Oliver was deliberately indifferent to his safety. His objections are without merit.

The Court has conducted a careful *de novo* review of the pleadings and testimony in this case, along with the Report of the Magistrate Judge and the Plaintiff's objections thereto. Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the Plaintiff's objections are without merit. It is accordingly

ORDERED that the Plaintiff's objections are overruled and the Report of the Magistrate Judge (docket no. 16) is hereby ADOPTED as the opinion of the District Court. It is further

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous and for failure to state a claim upon which relief may be granted. 28 U.S.C. §1915A(b). It is further

ORDERED that any and all other motions which may be pending in this civil action are hereby DENIED. Finally, it is

ORDERED that the Clerk shall send a copy of the opinion in this case to the Administrator of the Three Strikes List for the Eastern District of Texas.

So **ORDERED** and **SIGNED** this **7** day of **March, 2012.**

_____
Ron Clark, United States District Judge